**KENTUCKY BAR ASSOCIATION, Movant,**

v.

**Patrick Edward MOEVES, Respondent.**

**No. 2009–SC–000270–KB.**

Supreme Court of Kentucky.

March 24, 2011.

## OPINION AND ORDER

In a combined motion, the Kentucky Bar Association moves this Court to issue an order revoking Patrick Edward Moeves's probated discipline and commencing his one year suspension from the practice of law, pursuant to the Order in *Kentucky Bar Association v. Moeves*, 297 S.W.3d 552 (Ky.2009), as modified on November 25, 2009, and the Inquiry Commission moves this Court to enter an order temporarily suspending Moeves from the practice of law, pursuant to SCR 3.165(1)(a) and (1)(b). The KBA asserts Moeves violated the terms of his conditional discipline by receiving two charges prior to the conclusion of his probationary peri-

od. The Inquiry Commission asserts there is probable cause to believe: (1) Moeves has misappropriated funds held for others to his own use or has been otherwise improperly dealing with said funds; and (2) Moeves's conduct poses a substantial threat of harm to his clients or to the public. Moeves, whose KBA number is 86081 and whose last known bar roster address is 178 Tando Way, Covington, Kentucky 41017, was admitted to the practice of law in the Commonwealth of Kentucky on October 13, 1995.

### I. One-year suspension for violating the conditional discipline.

On September 16, 2008, the Supreme Court of Ohio entered an order prohibiting Moeves from practicing law in Ohio for two years for violating seven provisions of the Ohio Rules of Professional Conduct. *Cincinnati Bar Ass'n v. Mullaney*, 119 Ohio St.3d 412, 894 N.E.2d 1210 (2008). On October 1, 2009, this Court imposed reciprocal discipline and suspended Moeves from practice for one year, stayed for two years on the condition that he receive no further charges within two years of the Order. 297 S.W.3d 552. However, prior to the conclusion of the two year stay, the Inquiry Commission brought two charges against Moeves: (1) a seven-count charge on July 1, 2010 in KBA file 18033, and (2) a nine-count charge on September 30, 2010 in KBA file 18113. These two charges violate the terms of Moeves's conditional discipline and, therefore, we order Moeves be suspended from the practice of law in this Commonwealth for one year as provided for in the 2009 Order of this Court.

### II. Temporary suspension for improperly dealing in funds and posing a substantial threat to clients and the public.

The Inquiry Commission claims KBA files 18033, 18113, and 19254 provide prob-

able cause to find Moeves has misappropriated or otherwise been improperly dealing with funds held for others and his conduct poses a substantial threat of harm to his clients or to the public. SCR 3.165(1)(a) and (1)(b).

## KBA File 18113

In September 2007, Ronda Baird hired Moeves and his law partner to represent her on criminal charges in the United States District Court in the Middle District of Alabama.[1] Moeves and his partner agreed to represent Baird for a $100,000.00 retainer, with the total costs estimated at $200,000.00. While this case was pending, Baird also requested that Moeves help her with problems she was having with the Internal Revenue Service and that he investigate whether her accountant was embezzling money from her business.

Regarding the latter, Moeves told Baird he had a forensic accountant review her business accounts and, as she had suspected, her accountant had embezzled large sums from her business. Moeves told Baird he spoke with either a judge or someone in the Mexican consulate and believed the embezzled funds were in Mexico. Moeves assured Baird he would hire private investigators and travel to Mexico to recover the money. Baird paid Moeves for the private investigators and financed each of the numerous trips he took to Mexico. On one such trip, Moeves contacted Baird and instructed her to wire $10,000.00 to "Troy Ashcroft," a man Moeves said was related to the embezzling accountant. Moeves explained that Ashcroft would be arrested as soon as he cashed the wire transfer. Troy Ashcroft,

D.O. lives in Dry Ridge, Kentucky, and is Moeves's personal physician.

After Moeves made several unproductive trips to Mexico, Baird decided to accompany him but was hindered by the fact that she surrendered her passport during the federal investigation. Moeves informed Baird he was a friend of a United States Senator and for $20,000.00 the Senator would arrange for Baird to receive a new passport. Baird never received a passport and when she called the Senator's office, the Senator's secretary told Baird the Senator had never heard of either Moeves or Baird. When Baird confronted Moeves, he assured her that he would get a letter from the Senator regarding her passport. Needless to say, Baird never received the letter or a new passport.

Over time, Moeves's communication with Baird became increasingly infrequent, and when she pressured him for information he lied and told her that he was spending a lot of time in the hospital because he had a rare disease and little time to live. Under this guise, Moeves borrowed money from Baird for medical expenses.

Baird alleges she has paid Moeves around $1,000,000.00, much of which was in cash or wire transfers. In return, Moeves did little to no work on Baird's legal matters and spent the money on personal expenses. In March 2009, Baird demanded Moeves refund her payments and later hired Alabama attorney D. Craig Allred to bring a civil suit against Moeves for theft. Moeves has refunded $123,363.00 and promised an additional $315,000.00, though it is unclear whether this amount has been repaid. On October 19, 2009, Baird filed a Bar complaint against Moeves, to which he responded on December 2, 2009. On Sep-

---

1. Moeves is not licensed to practice law in Alabama but receive *pro hac vice* admission for this matter.

tember 30, 2010, the Inquiry Commission issued a nine-count charge against Moeves.

## KBA File 18033

In September, 2008, the same Ronda Baird called Moeves and his law partner to request their assistance on behalf of her employee, Rodolfo Contreras–Leos, who was arrested for possession of a forged driver's license. Despite not being licensed to practice law in Alabama, Moeves (1) contacted the U.S. Attorney's Office in Montgomery, Alabama, as well as local agents from the United States Department of Labor, a former agent for Immigration and Customs Enforcement, and the local prosecutor's office in Alabama to discuss the case; (2) negotiated with the prosecutor's office for the return of the contents of the vehicle, which may have implicated Baird; and (3) flew with his law partner and Baird to Alabama and met with Contreras–Leos in his jail cell for several hours.

After that meeting, Baird, Moeves and his partner went to the bank, where Baird paid Moeves $10,000.00 in cash and $12,000.00 by cashier's check to represent Contreras–Leos. There was no written or oral agreement for this representation and none of the funds were placed in Moeves's escrow account. Moeves and his partner did not obtain *pro hac vice* admission in Alabama and never appeared in court on behalf of Contreras–Leos. Alabama attorney Keith Rogers, associated as co-counsel, conducted Contreras–Leos's entire defense. Moeves and his partner assured Baird and Contreras–Leos's relatives the $22,000.00 would cover Rogers's fee. Rogers has yet to be paid for representing Contreras–Leos.

After Moeves and his law partner disassociated in March 2009, Baird and Contreras–Leos's relatives requested that Moeves repay the unearned portion of the fee. Moeves offered to repay all

$22,000.00 but has failed to do so. On September 23, 2009, Ledell and Carmen Rodriguez, Contreras–Leos's parents, filed a Bar complaint against Moeves, to which Moeves responded on November 3, 2009. In this response, Moeves erroneously claimed, "The only monies paid to the firm [ ] was the initial check of $12,000.00. . . ." The Inquiry Commission issued a seven-count charge against Moeves on July 1, 2010.

## KBA File 19254

In December 2007, Moeves began representing Joyce Elliott in a lawsuit against Cahill Surveyors (Cahill) regarding a survey Cahill conducted on property belonging to Elliott's deceased husband. Moeves told Elliott a lawsuit had been filed and they had a court date of October 13 or 14, 2009. A week prior to the court date, Moeves informed Elliott they had reached a settlement. When no settlement agreement was produced, Moeves said it was because Cahill had requested additional time. Nothing more ever happened in this lawsuit, for which Elliott paid Moeves a total of $9,911.58.

In early 2010, Moeves recommended Elliott file a bad faith lawsuit against Cahill and its insurance companies. Moeves told Elliott he filed the suit and a bench trial would be held. However, he later told her a "judge panel" would hear the case instead, the fee for which was $10,000.00, to be paid equally by the parties. Elliott accordingly paid Moeves $5,000.00 on May 6, 2010. When Moeves told her the opposing party failed to pay its half and she would have to split that cost with an insurance company, Elliott paid Moeves another $2,500.00. On May 21, 2010, Elliott paid Moeves a $5,000.00 "fee for Judge Douglas Stevens," whose role in the case has not been clarified.

Elliott was eventually informed that a final settlement had been reached, under which she would receive $1.5 million, and that her expenses would be reimbursed if they exceeded $75,000.00. To meet this threshold, Elliott paid Moeves an additional $23,282.42. As part of the purported settlement, Moeves gave Elliott an Agreed Order of Mediated Dismissal and a Release and Indemnity Agreement. The Agreed Order of Mediated Dismissal had a "Mediated Case No.: 10–CI–000912" and spaces for "D. Enre' Stevens, Mediator," the "Judge, Eastern District of the Commonwealth of Kentucky," and Cahill's counsel to sign. The Release and Indemnity Agreement contained similar indicia of authenticity, including notarization. Moeves told Elliott she would receive the reimbursement check by July 31, 2010 and the settlement check by August 15, 2010. When Elliott never received either payment, Moeves said he would seek an order for payment from Judge Bunning on September 20, 2010. When Elliott still did not receive any payments, Moeves informed her a court mediator, D. Enre' Stevens, had been appointed and had given the insurance company a deadline of October 14, 2010.

In addition to the above payments, Elliott paid Moeves various amounts totaling $16,956.17 for legal fees, court fees, an aerial photo, and a survey. Concerned, Elliott's son contacted attorney Gary Edmondson on October 15, 2010. Edmondson reviewed court records and discovered no documents had been filed in Elliott's case since 2006. Elliott filed a Bar complaint against Moeves on October 18, 2010.

Since December 2007, Elliott has paid Moeves a total of $62,650.17 and has yet to receive any payment or resolution. When Elliott contacted the people named in the Order of Mediated Dismissal and Release and Indemnity Agreement provided by Moeves, she discovered they did not exist. Elliott pursued criminal sanctions against Moeves and he was arrested on November 24, 2010 for theft by deception over $10,000.00, a class C felony. Detective Andrew Schierberg of the Kenton County Police stated by affidavit he had searched state and federal court records and discovered no suits were ever filed on Elliott's behalf. Det. Schierberg also contacted Cahill's owner and counsel, neither of whom had any knowledge of the suit, as well as retired Circuit Judge Douglas Stephens, who stated he does not represent anyone, has no knowledge of Elliott, and never discussed the case with Moeves. Det. Schierberg's review of Moeves's bank accounts reveals the funds paid by Elliott were never deposited into Moeves's escrow account. According to the affidavit, Moeves admitted to Det. Schierberg (1) he never filed any lawsuits on behalf of Elliott, (2) apart from the fees for an aerial photo and survey, air the expenses were fraudulent, and (3) he spent the fees on personal expenses. The criminal case is currently pending in Kenton District Court, case number 10–F–01715. Moeves did not file a response to the Inquiry Commission's petition for temporary suspension.

## CONCLUSION

■ Upon examination of the KBA's motion to suspend Moeves from the practice of law in this Commonwealth for one year and supporting documentation, this Court finds Moeves did violate the terms of his probated discipline by receiving charges within the prohibited time period. In addition, upon examination of the Inquiry Commission's petition for temporary suspension and supporting documentation, this Court finds probable cause to believe Moeves has misappropriated client funds to his own use or has otherwise improperly

dealt with such funds. SCR 3.165(1)(a). This Court further finds probable cause to believe Moeves's misappropriations pose "a substantial threat of harm to his clients or to the public." SCR 3.165(1)(b). Accordingly, the Court grants the KBA's motion and the Inquiry Commission's petition.

**IT IS THEREFORE ORDERED THAT:**

1. Patrick Edward Moeves is suspended for one year from the practice of law in this Commonwealth for violation of the terms of conditional discipline stated in a prior Order of this Court.

2. Patrick Edward Moeves is further suspended from the practice of law in this Commonwealth effective the date of this order and until superseded by subsequent order of this Court.

3. The terms of suspension shall run concurrently.

4. Pursuant to SCR 3.450, Moeves is ordered to pay all costs associated with this disciplinary proceeding, for which execution may issue from this Court upon finality of this Opinion and Order.

5. Pursuant to SCR 3.165(5), Moeves shall, within twenty days of the date of entry of this order, notify all clients in writing of his inability to continue to represent them and shall furnish copies of such letters of notice to the Director of the Kentucky Bar Association.

6. Pursuant to SCR 3.165(6), Moeves shall immediately, to the extent reasonably possible, cancel and cease any advertising activities in which he is engaged and remove his name from any firm with which he is associated.

All sitting. All concur.

ENTERED: March 24, 2011.

/s/ John D. Minton, Jr.

Chief Justice